1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

10

11  JOE HAND PROMOTIONS, INC.,                    CASE NO. 1:10-cv-02164-LJO-SKO

12              Plaintiff,                        **FINDINGS AND**
                                                  **RECOMMENDATIONS ON**
13      v.                                        **PLAINTIFF'S MOTION FOR**
                                                  **DEFAULT JUDGMENT**
14
    ALBERT JOSEPH LABONTE II,                     (Docket No. 12)
15  INDIVIDUALLY and d/b/a TONY
    ROMAS,                                        **OBJECTIONS, IF ANY, DUE WITHIN**
16                                                **15 DAYS**
                Defendant.
17
    _____/
18

19                          **I.  INTRODUCTION**

20      On March 25, 2011, Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") filed the present motion

21  for default judgment against Defendant Albert Joseph Labonte II, individually and dba Tony Romas

22  ("Defendant").  (Doc. 12.)  The motion was referred to this Court pursuant to 28 U.S.C. §

23  636(b)(1)(B) and Local Rule 302.

24                          **II.  FACTUAL BACKGROUND**

25      Plaintiff filed the instant action on November 19, 2010.  (Doc. 1.)  The complaint alleges

26  violations of 47 U.S.C. §§ 605 and 553, as well as causes of action for conversion and for violation

27  of the California Business and Professions Code section 17200, *et. seq*.  The suit is based on

28  Defendant's alleged unlawful interception, receipt, and exhibition of *"Ultimate Fighting*

*Championship 106: Tito Ortiz v. Forrest Griffin II*" (the "Program"), a mixed martial arts match, including all under-card bouts and fight commentary, that was telecast nationwide on November 21, 2009.  (Doc. 1, ¶¶ 9, 12.)  According to the complaint, Plaintiff was the exclusive commercial distributor of the Program.  (Doc. 1, ¶ 9.)

Count I of the complaint asserts a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications) alleging that Defendant knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain.  (Doc. 1, ¶¶ 8-17.)  Plaintiff seeks $100,000 in statutory damages as well as attorneys' fees and costs.  (Doc. 1, ¶ 17.)  Count II alleges a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations.  (Doc. 1, ¶¶ 18-22.)  Plaintiff requests $60,000 in statutory damages, as well as attorneys' fees and costs.  (Doc. 1, ¶ 22.)  Count III states a claim for conversion alleging that Defendant tortiously obtained possession of the Program and wrongfully converted it for his own benefit.  (Doc. 1, ¶¶ 23-26.)  As to Count III, Plaintiff seeks compensatory damages, exemplary damages and punitive damages.  (Doc. 1, ¶ 26.)  Count IV of the complaint alleges a violation of the California Business & Professions Code § 17200, *et. seq*.  (Doc. 1, ¶¶ 27-36.)  As to Count IV, Plaintiff seeks restitution, declaratory relief, injunctive relief, attorneys' fees, and costs of suit.  (Doc. 1, ¶¶ 35-36.)

On January 26, 2011, the summons as to Defendant Albert Joseph Labonte II was returned showing that service of the summons and complaint was executed on January 4, 2011.  (Doc. 5.)  Defendant failed to respond to the complaint by the January 25, 2011, due date.  On February 22, 2011, pursuant to Plaintiff's request, the Clerk entered default against Defendant.  (Doc. 9.)  On March 25, 2011, Plaintiff filed this motion for default judgment against Defendant.  (Doc. 12.)  Defendant did not oppose the motion.

### III.  DISCUSSION

**A.     Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered as follows:

By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has

appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:

(A)     conduct an accounting;
(B)     determine the amount of damages;
(C)     establish the truth of any allegation by evidence; or
(D)     investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Dundee Cement Co. v. Highway Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## B.     Analysis

Service of summons and complaint in this action was made on Defendant on January 4, 2011. A copy of the Proof of Service was filed with this Court on January 26, 2011.  Defendant failed to respond to the complaint or otherwise appear in the action.  The Clerk of the Court entered default against Defendant on February 22, 2011.  Defendant is not an infant or incompetent person, and is not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.  (Doc. 12-2, ¶ 3.)

In its motion, Plaintiff seeks default judgment and an award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) (statutory damages) and 47 U.S.C. § 605(e)(3)(C)(ii) (enhanced statutory damages) in the amount of $110,000 against Defendant for unlawfully intercepting, receiving, and exhibiting the Program on November 21, 2009, at his restaurant/bar.  Plaintiff also seeks damages in the amount of $1,300 for its state law conversion claim.

1.   **Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and Enhanced Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)**

Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(C)(i)(II) and enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii). (Doc. 12-1, 11:15-16; 15:1-2.) Pursuant to Section 605(a), "no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission of reception. . . ." Those who violate this Section are subject to the following civil penalty:

> [T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4)[1] of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment programming that purchased and retained the exclusive commercial exhibition licensing rights to the Program. (Doc. 12-4, ¶ 3.) Plaintiff marketed the sub-licensing (commercial exhibition) rights in the Program to its commercial customers. (*Id*.) Plaintiff contends that persistent signal piracy of its programming costs the company, its customers, and the community millions of dollars annually. (*Id*. at ¶ 12.) Plaintiff believes that the continued signal piracy is caused, in part, from the perceived lack of consequences (including nominal or minimal damage awards by the courts who hear its cases) for such unlawful interception and exhibition by the commercial signal pirates. (*Id*.) As such, Plaintiff requests that it be awarded the maximum allowance for statutory violations, totaling $10,000.

Plaintiff contends that significant enhanced statutory damages should be awarded under Section 605(e)(3)(C)(ii) because Defendant's actions were willful and done for a commercial advantage. Section 605(e)(3)(C)(ii) provides that where "the court finds that the violation was

---

[1] Paragraph 4 relates to persons who manufacture, assemble, modify, import, export, sell, or distributed any device or equipment knowing that the equipment is primarily of assistance in the unauthorized description of satellite cable programming. Plaintiff does not assert that Paragraph 4 is applicable in this case.

committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." Emphasizing the need for deterrence as to this Defendant and others, Plaintiff requests that it be awarded $100,000 in enhanced statutory damages.

Here, the summons and the complaint were properly served upon Defendant, his default was properly entered, and the complaint is sufficiently well-pled. *See Eitel*, 782 F.2d at 1471-72. By his default, Defendant admitted to willfully violating Section 605 for the purposes of commercial advantage. *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18. The facts before the Court indicate that Defendant's establishment had a maximum capacity of 200 people. (Doc. 12-3.) Dominique Vargas, Plaintiff's investigator, noted that there were four large, flat screen televisions on the night the Program was broadcast. (*Id.*) All four were located on the walls of the bar, toward the top. (*Id.*) Vargas conducted three head-counts in the bar while she was there, with fifty people in the first count, fifty-five people in the second count, and fifty-five people in the last count. (*Id.*)

The amount of damages awarded should be in an amount that is adequate to deter this Defendant and others from committing similar acts in the future. Therefore, the Court recommends that the maximum allowable statutory damages be awarded pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $10,000.

With regard to enhanced statutory damages, several factors militate against a substantial award. There is no evidence that Defendant (1) advertised the broadcast of the Program to entice a larger crowd, (2) charged a cover to enter the establishment, or (3) charged a premium for food and drinks on the night the broadcast was shown. Further, the headcounts during the Program indicate approximately fifty-five people were present in the establishment, approximately one-quarter of the establishment's capacity. (Doc. 12-3.) Moreover, Defendant has not been shown to be a repeat offender with regard to signal piracy.

Plaintiff contends that the courts have placed undue weight on the promotion of the program rather than the exhibition of the program, arguing that pirates do not generally advertise that they will exhibit programming unlawfully, do not generally increase the price of food and drinks, and do not

generally charge a cover so as to undercut establishments who do broadcast the program lawfully. (Doc. 12-4, ¶¶ 14-17.)  The Court has considered these arguments and finds that there is an impact based on Defendant's conduct and limited enhanced damages will produce the appropriate deterrent effect.  There is no evidence that Defendant's financial resources would require a large judgment to achieve the desired deterrent effect.  However, the Court is also mindful that minimal damage awards may result in a perceived lack of consequences for signal piracy.  (*See* Doc. 12-4, ¶¶ 11-13.) Considering these factors, the Court recommends that enhanced statutory damages be awarded pursuant to Section 605(e)(3)(C)(ii) in the amount of $5,000.

### 2.    Damages for Conversion

Plaintiff seeks $1,300 in conversion damages – the value of the property at the time of the conversion.

Under California law, conversion is the wrongful exercise of dominion over the property of another.  The elements of conversion are, "the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages."  *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant."  *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 n.1 (2009).  Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion.  *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995) (misappropriation of intangible property without authority from owner is conversion); *see also DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) (concluding that the right to distribute programming via satellite constituted a right to possession of personal property for purposes of a conversion claim under California law.)

Here, Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the Program, and thus had the right to possession of the property at the time of the conversion. Because Defendant did not legally purchase the Program, the exhibition of the fight in Defendant's Tony Romas restaurant on November 21, 2009, constituted conversion by a wrongful act or

disposition of property rights. Finally, the rate card[2] for the Program at an establishment with a seating capacity of between 151 and 200, which would apply to Defendant's establishment, indicates the sub-license fee for the Program would have been $1,300. (Doc. 12-4, ¶ 8, Exh. 1.)   Thus, Plaintiff is entitled to damages for conversion in the amount of $1,300.

## IV.  RECOMMENDATION

Based on a consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1.     Plaintiff's motion for default judgment be GRANTED;

2.     Judgment be entered in this action against Defendant Albert Joseph Labonte II, individually and dba Tony Romas as follows:

a.     $10,000 statutory damages for violation of 47 U.S.C. § 605;

b.     $5,000 enhanced statutory damages for violation of 47 U.S.C. § 605; and

c.     $1,300 for the tort of conversion.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 6, 2011**                             **/s/ Sheila K. Oberto**
                                                                        UNITED STATES MAGISTRATE JUDGE

---

[2] The rate card indicates the amount Plaintiff charges an establishment to sub-license and purchase the broadcast the Program.  (Doc. 12-4, ¶ 8, Exh. 1.)  The rates charged are based upon the capacity of the establishment.  In this instance, for an establishment with a capacity of 151-200 people, the rate to sub-license and broadcast the Program is $1,300.  (*Id.*)